UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARLOS JAVIER LOPEZ BENITEZ,

                              Petitioner,

              v.

FRANCIS et al.,

                              Respondents.

---

25 Civ. 5937 (DEH)

**AMENDED OPINION
AND ORDER**[1]

---

DALE E. HO, United States District Judge:

On July 18, 2025, Petitioner Carlos Javier Lopez Benitez ("Petitioner" or "Mr. Lopez Benitez") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeking, *inter alia*, his immediate release from ICE custody. *See* Pet. for Writ of Habeas Corpus ("Petition"), ECF No. 1. Mr. Lopez Benitez alleges that, on July 16, 2025, masked ICE agents "violently detained" him as he left a scheduled immigration court appearance in Manhattan in violation of the Due Process Clause and the Fourth Amendment. *Id.* at 1; *see also id.* ¶¶ 1, 12, 13, 31, 38. For the reasons stated herein, Mr. Lopez Benitez's Petition is **GRANTED**.

## BACKGROUND

### A. Factual Background

In 2023, Mr. Lopez Benitez fled his native Paraguay "seeking protection from persecution." *Id.* ¶¶ 1, 8. On or about May 11, 2023, U.S. Customs and Border Protection ("CBP") encountered Mr. Lopez Benitez "at or near the Mexico-Arizona border" and took him into custody. Oh Decl. ¶ 4, ECF No. 9. On May 14, 2023, CBP served Mr. Lopez Benitez "with a Form I-200

---

[1] The Court issues this Amended Opinion and Order, which supersedes its Opinion and Order at ECF No. 14, to address several typographical errors and to clarify footnote 9.

warrant for his arrest under section 236 of the Immigration and Nationality Act ("INA")," codified at 8 U.S.C. § 1226, and a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen[2] "present in the United States without being admitted or paroled." *Id.* ¶¶ 5, 6. In the NTA, CBP expressly declined to designate him as an "arriving alien." *See* Oh Decl. Ex. B, ECF No. 9-2. That same day, CBP released Mr. Lopez Benitez on his own recognizance "pursuant to INA section 236." Petition ¶ 7.

Since his release from ICE custody more than two years ago, Mr. Lopez Benitez has lived with one of his two U.S.-citizen sisters in Flushing, Queens, worked in construction, and regularly attended church. *Id.* ¶¶ 8, 10. Mr. Lopez Benitez has no criminal history in any country. *Id.* ¶ 11.

On November 1, 2023, Mr. Lopez Benitez appeared *pro se* for his first scheduled immigration court date. Oh Decl. ¶ 9. He regularly attended his subsequent court dates and filed an asylum application in January 2025. *Id.* ¶¶ 10-13.[3] On July 16, 2025, Mr. Lopez Benitez, accompanied by his two sisters, appeared *pro se* for another court date during which the immigration judge adjourned his case to July 19, 2029, for a merits hearing. *Id.* ¶ 14. Mr. Lopez Benitez alleges that, as he left that hearing, masked ICE agents "suddenly" and "violently detained" him, "knocking one of his sisters to the ground in the process." Petition at 1. The "incident was captured on video and [was] widely publicized."[4] *Id.* ¶ 13.

---

[2] This Opinion uses the terms "alien" and "noncitizen" interchangeably.

[3] Respondents allege that "[o]n July 3, 2024, Petitioner failed to appear at his master calendar hearing." Resp'ts' Mem. L. in Resp. to O.S.C. and in Opp'n to Pet. for Writ of Habeas Corpus ("Resp'ts' Opp'n") at 3, ECF No. 8; *see* Oh Decl. ¶ 11, ECF No. 9. The immigration court subsequently "adjourned that matter to December 23, 2024, to permit Petitioner another opportunity to appear," which he did. Resp'ts' Opp'n at 3; *see* Oh Decl. ¶¶ 11, 12.

[4] *See, e.g.*, Luis Ferré-Sadurní, *Immigrants File Class-Action Lawsuit to Stop ICE Courthouse Arrests*, N.Y. Times (July 16, 2025), https://www.nytimes.com/2025/07/16/nyregion/trump-ice-arrests-lawsuit-immigrants.html?smid=url-share (capturing, on video, ICE's arrest of Mr. Lopez Benitez on July 16, 2025, including his sister being pushed to the ground). A photo of this incident was an Associated Press "Photo of the Week" for the week of July 11-17, 2025. *See*

Mr. Lopez Benitez alleges that ICE arrested him pursuant to a new "nationwide campaign to detain people attending their immigration court hearings" without any "individualized basis," such as an assessment of an individual's dangerousness or flight risk. *Id.* ¶¶ 14, 24, 31. Mr. Lopez Benitez further contends that, pursuant to this new policy, "[h]e has received neither notice nor an opportunity to be heard as to whether a change in custody status was warranted" and that "[t]he government lacked reliable information of changed or exigent circumstances [since his 2023 arrest and release] that would justify [his] arrest [now]." *Id.* ¶¶ 31, 37.

After arresting Mr. Lopez Benitez, ICE detained him at the "ICE processing space" at 26 Federal Plaza in New York, New York and served him with a "new Form I-200 arrest warrant." Oh Decl. ¶¶ 15, 16; *see* Oh Decl. Ex. D, ECF No. 9-4. While detained at 26 Federal Plaza, Mr. Lopez Benitez alleges that he was subject to "inhumane conditions of confinement," including no access to "a bed, bathing facilities, or a change of clothes." Petition at 1. He was held there for approximately three days, where he slept on the floor, *see id.* ¶ 13, until July 19, 2025, when ICE transferred Mr. Lopez Benitez to the Joe Corley Processing Center in Conroe, Texas, *see* Oh Decl. ¶ 17.

## B. Procedural Background

On Friday, July 18, 2025, while still detained at 26 Federal Plaza, Mr. Lopez Benitez filed this Petition seeking, *inter alia*, his "immediate and unconditional release" from custody. Petition at 1. This matter was assigned to the undersigned on Monday, July 21, 2025. *See* July 21, 2025 Dkt. Entry. That same day, this Court, in order to preserve its jurisdiction, directed that Mr. Lopez Benitez not be removed from the country during the pendency of this litigation; ordered

---

*The top photos of the week by AP's photojournalists, July 11-17, 2025*, Assoc. Press (July 18, 2025), https://apnews.com/photo-gallery/associated-press-top-photos-this-week-c8d46f3134bbf3 bb5dd98d97b532fb0c?utm_source=copy&utm_medium=share.

Respondents to show cause why the Petition should not be granted by Tuesday, July 22, 2025; and instructed Mr. Lopez Benitez to submit any Reply by Wednesday, July 23, 2025, at 5:00 p.m.  *See* July 21, 2025 Order, ECF No. 4.  The Order also scheduled a hearing for Thursday, July 24, 2025, at 10:00 a.m.  *Id.* at 1.

Respondents subsequently requested an extension for their Opposition, *see* ECF No. 6, which the Court granted over Petitioner's objection, instructing Mr. Lopez Benitez to submit any Reply by Friday, July 25, 2025, and adjourning the hearing to Monday, July 28, 2025, at 11:00 a.m., *see* ECF No. 7.  The parties timely filed their respective briefs and the July 28, 2025 hearing proceeded as scheduled.  At the conclusion of the hearing, the Court issued an oral order granting the Petition and ordering that Mr. Lopez Benitez be returned to this District and released from custody no later than July 31, 2025.  *See* Conf. Tr. 37:2-43:22.  It further directed Respondents to certify its compliance with the Court's order on the docket.  *See id.* at 46:24-47:2.  The Court also noted that this written Opinion and Order would follow, which now supersedes the Court's oral ruling.  *See id.* at 43:21-22.

On August 1, 2025, Respondents certified by letter that Mr. Lopez Benitez was released from ICE custody and reunited with his family on July 31, 2025, in accordance with the Court's order.  *See* August 1, 2025 Letter, ECF No. 11.

## DISCUSSION[5]

This Petition raises three principal issues: (1) whether Mr. Lopez Benitez, who has resided in the United States for approximately two years, was detained pursuant to 8 U.S.C. § 1225(b)(2)(A) ("§ 1225" or "§ 1225(b)"), which requires mandatory detention of certain

---

[5] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

noncitizens "seeking admission" to the country, or pursuant to 8 U.S.C. § 1226(a) ("§ 1226" or "§1226(a)"), which provides for discretionary authority to detain other noncitizens who are "already in the country," *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018) (citing 8 U.S.C. § 1226); (2) whether, if Mr. Lopez Benitez was detained under § 1226(a), his detention without an individualized consideration of his circumstances and/or an opportunity to appeal the Department of Homeland Security's ("DHS") decision to detain him to an immigration judge violates the Due Process Clause; and (3) if his detention violates the Due Process Clause, whether administrative exhaustion, in the form of an appeal to an immigration judge, is required before this Court may order his requested relief of immediate release from ICE custody.  The Court considers each issue in turn below.

## I.      Whether Petitioner is Detained Pursuant to 8 U.S.C. § 1225 or § 1226

As a threshold matter, the Court must first determine whether Mr. Lopez Benitez was detained pursuant to 8 U.S.C. § 1225(b)(2)(A) and subject to mandatory detention, or pursuant to 8 U.S.C. § 1226(a) and subject to detention on a discretionary basis—as is consistently represented in DHS documents.  *See* Resp'ts' Mem. L. in Resp. to O.S.C. and in Opp'n to Pet. for Writ of Habeas Corpus ("Resp'ts' Opp'n") at 6, ECF No. 8; Oh Decl. Exs. A-D, ECF Nos. 9-1 to 9-4.

The Court begins with a brief overview of § 1225 and § 1226.  It then concludes that Mr. Lopez Benitez was detained pursuant to DHS's discretionary authority under § 1226(a), for two independent reasons: (1) DHS has consistently treated Mr. Lopez Benitez as subject to detention on a *discretionary* basis under § 1226(a), which is fatal to Respondents' claim that he is subject to mandatory detention under § 1225(b); and (2) a proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens "seeking admission"

does not apply to someone like Mr. Lopez Benitez, who has been residing in the United States for more than two years.

### A.    Overview of § 1225 and § 1226

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "A noncitizen detained under Section 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025) (quoting *Jennings*, 583 U.S. at 300). Such parole "into the United States," under section 1182(d)(5)(A), permits a noncitizen to physically enter the country, 8 U.S.C. § 1182(d)(5)(A), subject to a reservation of rights by the Government that it may continue to treat the noncitizen "as if stopped at the border," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). Other than this limited exception (which is not implicated here), detention under § 1225(b)(2) is considered mandatory. *See, e.g.*, *Gomes*, 2025 WL 1869299, at *8 (describing detention under § 1225(b)(2) as "mandatory"). Individuals detained under § 1225 are not entitled to a bond hearing. *See Jennings*, 583 U.S. at 297 ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

As the Supreme Court has explained, while "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 288-89 (emphasis added); *see also id.* at 288 (explaining that, "*once inside* the United States . . . *an alien present in the country* may still be removed" under "Section 1226") (emphasis added). Section 1226(a) provides

6

that, for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). Section 1226(a), therefore, "establishes a discretionary detention framework." *Gomes*, 2025 WL 1869299, at *1. Critically, under 8 C.F.R. § 1236.1(d)(1), a noncitizen detained under § 1226 may appeal an "initial custody determination," including the setting of bond, to an immigration judge. Notwithstanding the above, pursuant to a recent amendment, there are some limited exceptions (not directly implicated here) under subsection (c) requiring "detention for non-citizens who meet certain criminal and inadmissibility criteria." *Martinez v. Hyde*, 25 Civ. 11613, 2025 WL 2084238, at *7 (D. Mass. July 24, 2025) (citing *Gomes*, 2025 WL 1869299, at *6); *see* 8 U.S.C. § 1226(c).

Given that detention under § 1225(b)(2) is essentially mandatory and that detention under § 1226(a) is largely discretionary, it follows that whichever statute Mr. Lopez Benitez is subject to is potentially dispositive here. That is, if Mr. Lopez Benitez was detained as a noncitizen "seeking admission" to the country under § 1225(b)(2) (as Respondents argue), his detention would be mandatory. If, instead, he was detained as a noncitizen "already in the country" under § 1226(a), *Jennings*, 583 U.S. at 288-89, (as Mr. Lopez Benitez argues) then his detention is discretionary and he would be, at a minimum, entitled to an appeal before an immigration judge.

To be sure, the line between when a person is "seeking admission" as opposed to being "already in the country" is not necessarily obvious. For instance, someone who has just crossed the border may technically be "in" the country but is still treated as "an alien seeking initial entry." *Thuraissigiam*, 591 U.S. at 114, 139 (holding that a noncitizen detained "within 25 yards of the border" is treated as if stopped at the border). But there is no dispute that the provisions at issue here are mutually exclusive—a noncitizen cannot be subject to both mandatory detention under

7

§ 1225 and discretionary detention under § 1226, a point that Respondents conceded. *See* Conf. Tr. 22:17-23:2. It therefore follows that if Mr. Lopez Benitez was detained pursuant to one provision, he cannot be subject to the other.

**B.    Respondents' Treatment of Mr. Lopez Benitez under § 1226**

Here, Respondents' own exhibits unequivocally establish that Mr. Lopez Benitez was detained pursuant to Respondents' discretionary authority under § 1226(a). The warrants for Mr. Lopez Benitez's respective arrests in 2023 and 2025 explicitly authorized those arrests pursuant to "section 236 of the Immigration and Nationality Act"—i.e., § 1226. Oh Decl. Exs. A, D; *see* Oh Decl. ¶ 5 ("On May 14, 2023, CBP personally served Lopez Benitez with a Form I-200 warrant for his arrest under section 236."); Conf. Tr. 22:2-6. In fact, Mr. Lopez Benitez's 2023 Notice of Custody Determination explicitly states—and Respondents confirm—that CBP released him on his own recognizance also pursuant to § 1226. *See* Oh Decl. Ex. C; Conf. Tr. 13:13-17. Such a release on recognizance is not "humanitarian" or "public benefit" "parole into the United States" under §§ 1225 and 1182(d)(5)(A), but rather a form of "conditional parole" from detention, authorized under § 1226. *See Martinez*, 2025 WL 2084238, at *3 (explaining that petitioner's release on her own recognizance "does not indicate that she was examined or detained under section 1225 but instead explicitly premises her release on section 1226 ('[i]n accordance with section 236 of the Immigration and Nationality Act')"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that a noncitizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing § 1225 examinations). Respondents aver that Mr. Lopez Benitez's 2023 release under § 1226 was "revoked on July 16, 2025, when he was arrested," Resp'ts' Opp'n at 7, but that does not change the fact that his 2023 release was

under § 1226.  And when Respondents arrested and detained Mr. Lopez Benitez last month, they did so again under § 1226 explicitly.  *See* Oh Decl. Ex. D.

During oral argument, counsel for Respondents initially stated that when Mr. Lopez Benitez was first encountered by CBP in 2023, § 1225 could have been applicable to him and that, in fact, he may have initially been designated for such treatment under § 1225.  *See* Conf. Tr. 16:11-21.  But Respondents' counsel also acknowledged that there was nothing in the record to reflect that hypothesis.  *See id.*  Accordingly, the Court cannot credit that speculation.  Nothing in the 2023 documents authorizing Mr. Lopez Benitez's arrest and subsequent release suggest anything to that effect.  And the record is unclear as to precisely where and how close to the border Mr. Lopez Benitez was first encountered by CBP in 2023.  In any event, regardless of what Mr. Lopez Benitez's designation *could have been* when he was initially arrested in 2023, there is no dispute that: (1) he *was* in fact designated for treatment under § 1226 at that time; (2) his most recent warrant from last month was also issued subject to § 1226; and (3) Respondents detained him on that basis.  That has been Respondents' position consistently.  And during oral argument, counsel for Respondents disclaimed any notion that the documents authorizing Mr. Lopez Benitez's arrest and subsequent release in 2023 were issued in error.  *See id*. at 13:18-23.

Thus, it is indisputable that Respondents have consistently treated Mr. Lopez Benitez as subject to § 1226, and that they most recently detained him last week pursuant to that statute. Indeed, the record is devoid of any reference to § 1225 in connection with Mr. Lopez Benitez's arrest and detention until they filed their Opposition to his Petition.  *See id.* at 22:7-16; Resp'ts' Opp'n at 6-8; *see also Martinez*, 2025 WL 2084238, at *2 ("In their new motion, Respondents clearly state for the first time their position that Petitioner's initial encounter with Border Patrol . . . is what establishes her as subject to mandatory detention under section 1225 (b)(2)(A). . . . The record, however, does not support that conclusion.").  The Court cannot credit

Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation. *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations"). These facts, taken together, can support only one conclusion—that Mr. Lopez Benitez was not mandatorily detained as a noncitizen "seeking admission" under § 1225(b), but rather as someone "already in the country," *Jennings*, 583 U.S. at 288-89, pursuant to Respondents' discretionary authority under § 1226(a)—which Respondents have consistently maintained until they filed their Opposition to the Petition last week, *see* Resp'ts' Opp'n.

### C.    Case Law on the Respective Scopes of § 1225 and § 1226

Even without Respondents' prior concessions as reflected in their exhibits, the Court reaches the same conclusion in light of a proper understanding of the statutory provisions at issue. The Court does so based on the plain text of the provisions, as well as the reasoning in the only cases it has identified confronting the question of the respective scopes of each provision, including two recent decisions from the District of Massachusetts, concluding that "the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Gomes*, 2025 WL 1869299, at *7; *see Martinez*, 2025 WL 2084238, at *8. In reaching this conclusion, it is unnecessary to define the precise outer boundaries of when mandatory detention under § 1225 applies because it clearly does not apply to someone who has resided in the country for two years like Mr. Lopez Benitez.

*Martinez v. Hyde*, a recent decision from the District of Massachusetts, considered whether a petitioner (Ms. Diaz Martinez) was subject to mandatory detention under § 1225(b)(2)(A). *See*

2025 WL 2084238, at *1.  The court began its analysis by looking to the plain text of the statute.

As relevant here, § 1225(b)(2)(A) states:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

(emphasis added).    *Martinez* then explained, "for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'"  2025 WL 2084238, at *2.  The court concluded that, because Ms. Diaz Martinez was already residing in the country when she was detained, she was not "seeking admission" at that time, and therefore, "Section 1225(b)(2)(A) . . . simply had no application to her case." *Id.* at *8.  And because the respondents in her case did not "assert[] that [Ms. Diaz Martinez was] subject to detention under section 1226, the Court [saw] no reason to consider that basis," and ruled her detention unlawful.  *Id.* at *8 n.23.

Here, the facts of Mr. Lopez Benitez's case are virtually identical in all material respects to those of Ms. Diaz Martinez's.  He had been residing in the United States for more than two years at the time of his arrest and detention in 2025.  *See* Petition ¶¶ 8, 10.  He was not "seeking admission" at that time and is therefore not subject to § 1225(b).  Adopting the reasoning and conclusions set forth in *Martinez*, the Court likewise concludes that Mr. Lopez Benitez is not subject to mandatory detention under § 1225(b).[6]

Nonetheless, it remains Respondents' position that a noncitizen who is already present and has been residing in the United States for several years can still be subject to mandatory detention

---

[6] Unlike in *Martinez*, however, the Court will consider the validity of Mr. Lopez Benitez's detention under § 1226(a), because Respondents have expressly raised that provision as an alternative basis for his detention.  *See* Resp'ts' Opp'n at 12.

pursuant to § 1225(b). *See* Conf. Tr. 19:3-20:6. According to Respondents, someone in Mr. Lopez Benitez's position—i.e., someone who has never been lawfully "admitted" to the United States—continues to be a noncitizen who is "seeking admission," and therefore remains subject to mandatory detention under § 1225(b)(2)(A). *See id.* at 19:3-20:6. This argument is unavailing for several reasons.

First, as *Martinez* concluded, this argument would render the phrase "seeking admission" in § 1225(b)(2)(A) mere surplusage. *See* 2025 WL 2084238, at *4 (describing respondents as treating the phrase "seeking admission" as mere surplusage of the "applicant" requirement in § 1225(b)(2)(A)). As discussed, mandatory detention under § 1225(b)(2)(A) applies to a noncitizen who meets three criteria: (1) one who is an "applicant for admission" (a "term of art" in the INA that includes noncitizens who "arrive[] in the United States," as well as those already "present in the United States who ha[ve] not been admitted," U.S.C. § 1225(a)(1)); (2) who is actively "seeking admission" to the country, and (3) whom an examining immigration officer determines "is not clearly and beyond a doubt entitled to be admitted." *Martinez*, 2025 WL 2084238, at *2 (quoting § 1225(b)(2)(A)). If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all "applicant[s] for admission," there would be no need to include the phrase "seeking admission" in the statute. That is, rather than stating that mandatory detention is required for any "applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," § 1225(b)(2)(A) (emphasis added), the statute would instead provide for mandatory detention for any "applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted." By reading a phrase out of the statute, Respondents' interpretation of § 1225 clearly "violates the rule against surplusage." *Martinez*, 2025 WL 2084238, at *6; *see United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S.

419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

*Martinez* further stated that Respondents' reading of § 1225(b)(2)(A) "negates the plain meaning of the text." 2025 WL 2084238, at *6 (citing *Polansky*, 599 U.S. at 432). The court explained that the active construction of "the phrase 'seeking admission,'" though undefined in § 1225(b)(2)(A), "necessarily implies some sort of present-tense action." *Id.* The INA defines "admitted" and "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). While respondents are correct that Mr. Lopez Benitez was never "admitted" to the United States in that he never lawfully entered it (and is therefore treated as an "applicant for admission" under various provisions of the statute), it does not follow that he continues to be actively "seeking" such lawful entry at this time. He has already "entered" the country (albeit unlawfully). Respondents' interpretation of § 1225(b)(2)(A) simply ignores the statute's present-tense active language. *See Matter of M-D-C-V-*, 28 I. & N. Dec. 18, 23 (B.I.A. 2020) ("The 'use of the present progressive, like use of the present participle, denotes an ongoing process.'") (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011-12 (9th Cir. 2020)).[7] And by treating the terms "applicant for admission" and "alien seeking admission" as synonymous, Respondents' interpretation violates the principle that Congress is presumed to have acted intentionally in choosing different words in a statute, such that different words and phrases should be accorded different meanings. *See Yale New Haven Hosp. v. Becerra*,

---

[7] To the extent that Respondents might point to Mr. Lopez Benitez's asylum application to argue that he continues to "seek" something, what he seeks is not "admission" or "lawful entry" to the United States, but to obtain a lawful means to *remain* here. *See Remain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remain ("[T]o stay in the same place or with the same person or group") (last visited August 8, 2025).

56 F.4th 9, 21 (2d Cir. 2022) (describing the "meaningful-variation canon" as "the principle that where a statutory scheme has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea") (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457-58 (2022)).

The implementing regulations—which were "promulgated mere months after passage of the statute" and have remained consistent over time—further underscore the active nature of the term "seeking admission" in § 1225(b). *Martinez*, 2025 WL 2084238, at *6 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024)[8]). Pursuant to those regulations, the term "arriving alien," *see id.* (citing 8 C.F.R. § 235.3(c)(1)), is treated as "roughly interchangeable with an 'applicant . . . seeking admission,'" and is defined as "an applicant for admission *coming or attempting to come into* the United States," *id.* (citing 8 C.F.R. § 1.2) (emphasis added). "In other words, an 'arriving alien' is an 'applicant' who is also doing something: 'coming or attempting to come into the United States.'" *Id.*[9] "This mirrors the text of section 1225(b)(2)(A)," under which detention is mandatory for an "applicant" who is "doing something: 'seeking admission.'" *Id.*

This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described

---

[8] *Loper Bright* explained that an agency's implementing regulations, while not binding, can still "provide a useful reference point for understanding a statutory scheme, particularly where those regulations were 'issued roughly contemporaneously with enactment of the statute and [have] remained consistent over time.'" *Martinez v. Hyde*, 25 Civ. 11613, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024)).

[9] Notably, the Notice to Appear form has separate boxes to designate a noncitizen in removal proceedings as an "arriving alien," an "alien present in the United States," or "admitted to the United States"—and Mr. Lopez Benitez was designated not as "arriving," but rather, like Ms. Diaz Martinez, as "present in the United States." Oh Decl. Ex. B, ECF No. 9-2.

as "seeking admission" to the theater.  Rather, that person would be described as already present

there.  Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily

describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say

that they had entered unlawfully but now seek a lawful means of remaining there.   As

§ 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the

United States, it cannot, according to its ordinary meaning, apply to Mr. Lopez Benitez, because

he has already been residing in the United States for several years.

Respondents' interpretation fails for several additional reasons.  For instance, the *Martinez*

court explained that "section 1225(b)(2) cannot be read to mandate detention of non-citizens

already present within the United States . . . as that would nullify a recent amendment to the

immigration statutes."  *Id.* at *7 (citing *Gomes*, 2025 WL 1869299, at *5-8).  As noted, an

amendment codified at § 1226(c), "added only months ago . . . , mandates detention for non-

citizens who meet certain criminal *and* inadmissibility criteria."  *Id.* (citing *Gomes*, 2025 WL

1869299, at *6) (emphasis added).  But if, as Respondents suggest, "a non-citizen's inadmissibility

were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025

amendment," which requires detention for noncitizens who are *both* inadmissible and meet certain

criminal criteria, "would have no effect."  *Id.* (citing *Gomes*, 2025 WL 1869299, at *7); *see Marx

v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest

when an interpretation," such as this one, "would render superfluous another part of the same

statutory scheme."); *Gundy v. United States*, 588 U.S. 128, 141 (2019) ("It is a fundamental canon

of statutory construction that the words of a statute must be read in their context and with a view

to their place in the overall statutory scheme.")).  Such a result, *Martinez* opined, is "presumptively

dubious" and further supports the conclusion that sections 1225 and 1226 "apply to different

classes" of noncitizens.  2025 WL 2084238, at *7 (citing *Matter of M-S-*, 27 I. & N. Dec. 509, 516

(Att'y Gen. 2019) ("[S]ection [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens.")).

Moreover, Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention,[10] while simultaneously narrowing § 1226(a) such that it would have extremely limited (if any) application.  If, as Respondents contend, anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A), *see* Conf. Tr. 19:9-20:4, then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply. Perhaps it might still apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully.  But there is no indication that Congress intended § 1226 to be limited only to visa overstays.  And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach.

By contrast, decades of practice reflect "DHS's longstanding interpretation" of § 1226(a) as "appl[ying] to those who have crossed the border between ports of entry and are shortly thereafter apprehended."  *Martinez*, 2025 WL 2084238, at *7 (citing Transcript of Oral Argument 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).  As the *Martinez* court concluded, "[t]he line historically drawn between" sections 1225 and 1226, which "mak[es] sense of their text

---

[10] "It has been estimated" that the application of § 1225 that Respondents propose "would require the detention of millions of immigrants currently residing in the United States." *Martinez*, 2025 WL 2084238, at *5 (citing Maria Sacchetti & Carol D. Leonning, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG] ("[T]he policy will apply to millions of immigrants who crossed the U.S.-Mexico border over the past few decades")).

and the overall statutory scheme, is that section 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Id.* at *8 (citing *Jennings*, 583 U.S. at 288-89); *see Rodriguez v. Bostock*, No. 25 Civ. 524, 2025 WL 1193850, at *12-16 (W.D. Wash. Apr. 24, 2025) (finding that a noncitizen apprehended within the United States and charged with inadmissibility was necessarily detained under section 1226, rather than 1225); *Gomes*, 2025 WL 1869299, at *5-8 (same). The *Martinez* court noted that this conclusion was further supported by "three recent, albeit unpublished, decisions by the Board of Immigration Appeals ("BIA"), all clearly holding that the detention of a non-citizen arrested within the United States is governed under section 1226, rather than section 1225." 2025 WL 2084238, at *8 (citing *Rodriguez*, 2025 WL 1193850, at *5). Indeed, in one case, the BIA "stated that it was 'unaware of any precedent' that would support Respondents' position here." *Id*. This Court has similarly been unable to identify any authority to support Respondents' expansive interpretation of § 1225(b).

Finally, Respondents argue that, even assuming all of the above is correct, Mr. Lopez Benitez may have properly been understood as someone who was actively "seeking admission" when he was *first* arrested by CBP in 2023. *See* Conf. Tr. 19:3-8. But as noted above, that assertion is belied by Respondents' own exhibits and admissions regarding his 2023 arrest and release, indicating both occurred under § 1226. In any event, Mr. Lopez Benitez's initial arrest is not what is at issue in this case. It is his 2025 arrest, which occurred at a time when he was (and had long been) residing in the United States, and thus subject to § 1226(a). Respondents conceded as much at oral argument by acknowledging that their position in this case does not hinge on Mr. Lopez Benitez's first arrest in 2023, but on the fact that he was never lawfully admitted into the United States and that his presence here remained unauthorized as of his 2025 arrest. *See, e.g.*, *id.* at

23:22-24:16.  For the reasons explained above, the Court rejects the notion that § 1225(b) applies to all such individuals.

*　　*　　*

In sum, the Court declines to credit Respondents' position that Mr. Lopez Benitez is "seeking admission" to the United States and is thus subject to mandatory detention under § 1225(b).  Respondents' concessions in their exhibits regarding Mr. Lopez Benitez's arrest, release, and subsequent re-arrest are, by themselves, a sufficient basis to conclude that he was detained pursuant to § 1226.  But even without those concessions, a proper reading of § 1225(b) compels the conclusion that it does not apply to Mr. Lopez Benitez.  Again, the Court need not reach the outer limits of the scope of the phrase "seeking admission" in § 1225(b)—it is sufficient here to conclude that it does not reach someone who has been residing in this country for more than two years, and that as someone "already in the country," *Jennings*, 583 U.S. at 289, Mr. Lopez Benitez may be subject to detention only as a matter of discretion under § 1226(a).

## II.    Due Process

Having concluded that Mr. Lopez Benitez's detention is discretionary and not mandatory, the Court next turns to whether it violates due process.  The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  It is well established that such protection extends to noncitizens, including those who are in removal proceedings.  *See id.* at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993).  "Even noncitizens have a liberty interest in continued freedom from

18

civil immigration confinement." *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (citing *Lopez v. Sessions*, No. 18 Civ. 4189, 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) ("Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")).

In the Second Circuit, the "*Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test applies when determining the adequacy of process in the context of civil immigration confinement." *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *2 (S.D.N.Y. July 13, 2025) (citing *Valdez*, 2025 WL 1707737, at *3). "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335). As explained below, applying the *Mathews v. Eldridge* balancing test here, the Court concludes that Mr. Lopez Benitez's detention violates due process.

### A. The Private Interest

First, Mr. Lopez Benitez invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Here, Mr. Lopez Benitez "does not contend that greater judicial-type procedures must be imposed upon the administrative actions of ICE than those already required by law; [rather, he] argues that the agency must comply with the procedures already in place, and its failure to do so amounts to a complete

and arbitrary denial of due process." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing *Velasco Lopez*, 978 F.3d at 851).

Section 1226(a) provides that, "pending a decision on whether [an] alien is to be removed from the United States," the Attorney General "may . . . detain" the noncitizen or "may release" the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a). This language undoubtedly vests broad authority to arrest and detain noncitizens, "but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest *any* person in the United States suspected of being removable." *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021) (emphasis in original). And before the Government may exercise such discretion to detain a person, "§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020). That conclusion follows from the text of § 1226(a), which provides that the Attorney General "may continue to detain" an arrested noncitizen, as "[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Id.* at 235 (quoting *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 194 (1991) (interpreting 8 U.S.C. § 1252)).

Moreover, the regulations implementing § 1226(a) delegate to DHS officers the authority to grant bond or conditional parole, and pursuant to such authority, a DHS officer must make an individualized determination as to the appropriateness of detention based on two factors—whether the noncitizen is a "danger to property or persons" and is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see* 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must

demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  Respondents concede that under the applicable regulations, "[w]hen an alien is apprehended, a DHS officer makes an initial custody determination."   Resp'ts' Opp'n at 13 (citing 8 C.F.R. § 236.1(c)(8)).  If DHS ultimately decides to detain a noncitizen after conducting such an assessment, that noncitizen may appeal said decision before an immigration judge, who must consider the same factors.  *See* 8 C.F.R. §§ 1003.19(d), (e) (providing for review of custody and bond determinations by an immigration judge); *Matter of Siniauskas*, 27 I. & N. Dec. 207, 207 (B.I.A. 2018) ("An alien in a custody determination under section 236(a) of the Immigration and Nationality Act, 8 U.S.C. § 1226(a) (2012), must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.") (citing *Matter of Fatahi*, 26 I. & N. Dec. 791, 793-94 (B.I.A. 2016); *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112-13 (B.I.A. 1999), *modified on other grounds*, *Matter of Garcia Arreola*, 25 I. & N. Dec. 267 (B.I.A. 2010)).

Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.  *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge . . . may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."). If all noncitizens subject to § 1226(a) could simply be detained on a categorical (or arbitrary) basis without any kind of individualized assessment, it would make little sense to permit such individuals an opportunity to challenge their detention by an appeal before an immigration judge on the basis of specific factors such as dangerousness or flight risk.

This conclusion is further confirmed by looking to § 1226(c), which "carves out certain disfavored [criminal] non-citizens whom the Government is required to detain." *Martinez*, 2025 WL 2084238, at *7 (citing *Gomes*, 2025 WL 1869299, at *6); *see* 8 U.S.C. § 1226(c). There would be little need for such a carveout requiring detention of certain criminal noncitizens if § 1226(a) were intended to authorize the categorical detention of any noncitizen unlawfully present inside the country. Rather, it is clear that § 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance.

Turning to the matter at hand, Mr. Lopez Benitez asserts that no individualized determination as to factors such as his flight risk or dangerousness occurred before ICE arrested him on July 16, 2025. *See* Pet'r's Reply in Supp. of Pet. for Writ of Habeas Corpus ("Pet'r's Reply") at 3, ECF No. 10. Respondents acknowledge that there is no evidence suggesting that any kind of individualized determination was ever made as to Mr. Lopez Benitez. *See* Conf. Tr. 15:13-16:1. In fact, nothing in the record reflects—and counsel for Respondents was unaware of—(1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, (4) whether there was any material change in circumstances with respect to Mr. Lopez Benitez that triggered his detention, or (5) whether there was any sort of new policy in place that triggered his detention. *See id.* at 16:22-17:13; 18:14-24. As noted above, Petitioner asserts the existence of a new ICE campaign to detain more noncitizens under § 1225, *see* Petition ¶¶ 14, 23, and there is some media reporting indicating the existence of a new ICE policy to that effect, *see Martinez*, 2025 WL 2084238 at *4 n.10. But at the hearing in this case, counsel for Respondents could neither confirm nor deny the existence of the alleged policy, or its application to Mr. Lopez Benitez. *See* Conf. Tr. 18:14-24. The utter lack of transparency here is problematic, to say the least, as it makes it impossible to determine why Mr. Lopez Benitez was

detained in the first place. *Cf. Biden*, 597 U.S. at 806-07 (holding that for an exercise of discretion to be valid, it must be "reasonably explained").

At the hearing, counsel for Respondents argued that § 1226(a) does not require that a noncitizen be given notice and an opportunity to contest detention at "some sort of pre-deprivation hearing in front of a DHS officer." Conf. Tr. 17:14-18:1. The Court does not hold anything to the contrary. To be clear, the Court does not hold that some sort of adversarial hearing-like process is required before DHS may exercise its discretion to detain a noncitizen under § 1226(a). Nor does the Court hold that DHS must engage in a painstaking review of every facet of a noncitizen's history and characteristics before doing so. *Cf. Reno*, 507 U.S. at 313 (finding that the requirement of an "individualized determination" in at least some contexts "does not mean that [DHS] must forswear use of reasonable presumptions and generic rules"). DHS undoubtedly has wide discretion under § 1226(a). It may shift its enforcement priorities and adopt internal policies meant to effectuate those priorities. And the adoption of new policies may, of course, have significant consequences, resulting in different kinds of detention determinations than were made previously, including on a broad scale.

At a minimum, however, § 1226(a) requires a valid exercise of DHS's discretion. And here, there is nothing to suggest that DHS exercised any discretion *at all* in detaining Mr. Lopez Benitez. To be clear, the problem is not that Respondents' proffered basis in its decision to detain Mr. Lopez Benitez is substantively inadequate in some respect. DHS has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court. The problem is that Respondents have not offered any explanation for Mr. Lopez Benitez's detention other than their initial assertion that it is mandatory—that is, that it is *non-discretionary*. Such an assertion is precisely the *opposite* of an exercise of discretion, which entails some sort of judgment. *See Discretion*, Merriam-Webster, https://www.merriam-webster.com/dictionary/discretion ("[I]ndiv

23

idual choice or judgment . . . the quality of having or showing discernment or good judgment . . . the result of separating or distinguishing") (last visited August 8, 2025). There is simply nothing in the record to suggest that DHS engaged in any kind of exercise of discretion whatsoever with respect to Mr. Lopez Benitez, in contravention of the basic procedural requirements of § 1226(a) and the regulations implementing it.

In sum, the facts clearly demonstrate that Mr. Lopez Benitez was "entitled to more process than he received" pursuant to § 1226(a) and its implementing regulations. *Valdez*, 2025 WL 1707737, at *4 (citing *Mathews*, 424 U.S. at 335). Thus, the Court concludes that a violation of Mr. Lopez Benitez's "liberty interest is clearly established" here. *Id.* at *3 (citing *Lopez*, 2018 WL 2932726, at *11; *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)).

### B. The Risk of Erroneous Deprivation

As to the second prong of the *Mathews v. Eldridge* balancing test, the Court concludes that the risk of erroneous deprivation is particularly high here. *See id.* (citing *Lopez*, 2018 WL 2932726, at *11, for the proposition that there was "a risk of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings"). The purpose of requiring an exercise of discretion prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty. This purpose is illustrated clearly here, as Respondents concede that there is no evidence in the record suggesting that Mr. Lopez Benitez is a flight risk or a danger to his community. *See* Conf. Tr. 17:6-13. Indeed, when DHS first released Mr. Lopez Benitez in 2023 pursuant to § 1226(a), it could not have done so validly unless it did not consider him to be a flight risk or danger to the community at that time, and Respondents do not contend that his 2023 release was erroneous. *See id*. at 14:17-15:10. Moreover, Respondents have failed to "articulate[] any change in circumstances between the time

of [Mr. Lopez Benitez's] initial release [in 2023] and his re-detention [in 2025] that now makes him a flight risk" or a danger to the community. *Valdez*, 2025 WL 1707737, at *3. Rather, the evidence in this case unequivocally suggests that Mr. Lopez Benitez is neither a flight risk nor a danger to the community, *see* Petition ¶¶ 10-13, and that his most recent detention occurred without the individualized assessment he was due under § 1226(a), *see* Conf. Tr. 15:17-16:1. Therefore, Mr. Lopez Benitez's "re-detention without" any individualized assessment such as "any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest." *Valdez*, 2025 WL 1707737, at *4 (citing *Mathews*, 424 U.S. at 335; *Lopez*, 2018 WL 2932726, at *11).

## C. The Government's Interest

Finally, "the Attorney General's discretion to detain individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854; *Zadvydas*, 533 U.S. at 690). But here, as Respondents acknowledge, there is nothing in the record demonstrating that Mr. Lopez Benitez is a flight risk or a danger to the community. *See* Conf. Tr. 17:6-13. On the contrary, the record demonstrates that Mr. Lopez Benitez regularly attended his immigration court appearances, filed an asylum application, obtained employment in the construction industry, regularly attended church, and has significant family ties in New York. *See* Petition ¶¶ 10-13. A family application was also filed on his behalf by one of his U.S.-citizen sisters, and he has no criminal history. *See id.* ¶¶ 11, 12. While there is substantial evidence in the record indicating that Mr. Lopez Benitez is not a flight risk or a danger to the community, there is no evidence in the record pointing in the opposite direction. Respondents have therefore clearly "failed to show a significant interest in [Mr. Lopez Benitez's] continued detention." *Valdez*, 2025 WL 1707737, at *4.

Thus, "[g]iven the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [his] detention," the Court concludes that "Respondents' ongoing detention of [Mr. Lopez Benitez] with no process at all, much less prior notice, no showing of changed circumstances, or opportunity to respond, violates his due process rights." *Id.* (citing *Lopez*, 2018 WL 2932726, at *15, for the proposition that there was "a due process violation when the petitioner was re-detained by immigration authorities with 'no deliberative process prior to, or contemporaneous with,' the detention").

### III.    Administrative Exhaustion

The final issue to consider is whether Mr. Lopez Benitez must exhaust administrative remedies—in this case, by appealing his detention to an immigration judge—before this Court can award relief.  Courts generally require "administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus," as a "prudential matter." *Quintanilla v. Decker*, No. 21 Civ. 417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, No. 18 Civ. 2640, 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)). However, such exhaustion is not a "statutory requirement." *Id.*  Indeed, courts in this Circuit may excuse exhaustion where certain exceptions apply, including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003).  Here, the Court concludes that Mr. Lopez Benitez is excused from administrative exhaustion because he has no genuine opportunity for adequate relief and has raised a substantial constitutional question. *See id.*

Mr. Lopez Benitez asserts, and this Court agrees, that he was denied due process when ICE detained him on July 16, 2025, without first conducting an individualized assessment as to his

26

dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion.  *See* Pet'r's Reply at 3.  Respondents maintain that, to cure this violation, Mr. Lopez Benitez may seek relief from this violation in a bond hearing in immigration court.  *See* Resp'ts' Opp'n at 12-15.  To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.  However, the implementing regulations provide that "[s]uch hearings . . . are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing 8 C.F.R. § 236.1(d)(1)) (emphasis in original); *see* 8 C.F.R. § 236.1(d) ("Application to immigration judge. After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released.").  And in this case, the issue is that there is no "initial decision" for Mr. Lopez Benitez to "appeal."  Accordingly, "[s]uch a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3; *cf. Velesaca*, 458 F. Supp. 3d at 241 ("[T]he fact that Plaintiffs may seek review by an IJ of their initial bond determination does nothing to mitigate the harm to Plaintiffs in the time they are in detention awaiting review.").

Indeed, given the nature of the constitutional violation Mr. Lopez Benitez sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate.  This is particularly so given that "[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded." *Velasco Lopez*, 978 F.3d at 852.  Accordingly, "Respondents' suggestion that [Mr. Lopez Benitez] has an adequate remedy available to [him] . . .

rings hollow," and the first exhaustion exception applies here.  *Chipantiza-Sisalema*, 2025 WL 1927931, at *3.

Two courts in this District recently imposed a prudential exhaustion requirement on petitioners who were detained by ICE under circumstances somewhat similar to that of Mr. Lopez Benitez.  *See Castillo Lachapel v. Joyce*, No. 25 Civ. 4693, 2025 WL 1685576, at *2-4 (S.D.N.Y. June 16, 2025); *Guzman v. Joyce*, No. 25 Civ. 4777, 2025 WL 1696891, at *1-2 (S.D.N.Y. June 17, 2025).  However, both cases can be distinguished on the grounds that neither considered the arguments the Court does here.  Namely, neither considered whether an exercise of discretion to detain a noncitizen under § 1226(a) requires a pre-deprivation individualized assessment, and if so, whether the failure to provide such an assessment violates due process.  *See Castillo Lachapel*, 2025 WL 1685576, at *2-4; *Guzman*, 2025 WL 1696891, at *2-3.

With respect to the fourth exception, there is no doubt that Mr. Lopez Benitez's Petition raises a substantial constitutional question that cannot properly be adjudicated administratively.  *See Chipantiza-Sisalema*, 2025 WL 1927931, at *3 ("[C]ourts may excuse administrative exhaustion where the petitioner has raised a substantial constitutional question . . . as Chipantiza-Sisalema has here.") (citing *Beharry*, 329 F.3d at 62; *Valdez*, 2025 WL 1707737, at *1 n.1).  Here, Mr. Lopez Benitez does not argue that he merely needs an opportunity to contest his detention, but that his detention under § 1226(a) without first receiving an individualized assessment is a violation of his due process rights.  *See* Pet'r's Reply at 3-4.  Neither an immigration judge nor the Board of Immigration Appeals is positioned to properly adjudicate such a claim—any relief that either could award would necessarily be after-the-fact.  *See Valdez*, 2025 WL 1707737, at *1 n.1 ("Here[,] Petitioner has raised a constitutional question that could not be properly addressed by the Immigration Judge or Board of Immigration Appeals.") (citing *Quintanilla*, 2021 WL 707062,

at *2).  Therefore, the Court concludes that Mr. Lopez Benitez is excused from exhausting administrative remedies.

## CONCLUSION

To summarize: Mr. Lopez Benitez has lived in this country for more than two years, works in construction, and has no criminal record.  He is an applicant for asylum and voluntarily appeared for a regularly scheduled proceeding in immigration court.  At the conclusion of that proceeding, masked federal agents suddenly appeared, forcibly separated him from his U.S.-citizen siblings, detained him in a room without a bed or access to a shower for three days, and then shipped him halfway across the country.  They offered no explanation as to why they did this until, more than a week later, they filed their Opposition to Mr. Lopez Benitez's Petition.

First, Respondents say that Mr. Lopez Benitez's detention was mandatory under 8 U.S.C. § 1225(b), even though the Government itself has for years consistently treated him as subject to detention only as a matter of *discretion* under a different statute, 8 U.S.C. § 1226(a).  Respondents so assert even though mandatory detention under § 1225(b) is reserved for undocumented immigrants "seeking admission" to the United States, rather than for those "already in the country," *Jennings*, 583 U.S. at 288-89—and Mr. Lopez Benitez has resided here for more than two years.  Given Respondents' concessions, the plain meaning of sections 1225 and 1226, and case law interpreting those provisions, the Court cannot credit Respondents' position that Mr. Lopez Benitez's detention was mandatory.

No matter, Respondents say—even if Mr. Lopez Benitez's detention was not compulsory but a matter of discretion under § 1226(a), they *chose* to exercise such discretion.  But they do not say that they considered Mr. Lopez Benitez's individual circumstances.  They do not even say when, why, how, or by whom the decision to detain him was made.  In fact, they offer no explanation whatsoever of their purported "exercise of discretion" to detain Mr. Lopez Benitez

other than their initial assertion that his detention was *non-discretionary*.  Essentially, Respondents say they chose to detain him because they had no choice to do otherwise.  That does not suggest that any "discretion" was actually exercised.

Not to worry, Respondents say, because even if Mr. Lopez Benitez has a valid claim for his release, he can appeal to an immigration judge.  He just has to stay incarcerated for weeks in a far-flung location while the appeal plays out, during which the immigration judge will consider various factors such as whether he is a risk of flight or a danger to the community—factors that Respondents cannot say one way or the other if DHS even considered in making its initial detention determination.  That option, the Court concludes, is inadequate to address the denial of due process that Mr. Lopez Benitez was entitled to in the first instance.

Mr. Lopez Benitez appears to be far from alone.  His counsel assert that his treatment is part of a "nationwide campaign," as set forth in an ICE internal memo that has been described in various media reports, which suggests that millions could be swept up in the same way.  For their part, Respondents cannot confirm or deny the existence of such a new policy.  Yet, they appear to maintain that they must categorically detain all undocumented immigrants who they believe have entered the United States unlawfully—no matter how long they have been residing in the country since.  In practice, Respondents seem to be detaining some arbitrary portion of such individuals as they leave their regularly-scheduled immigration court proceedings.  But treating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process.  And the "suggestion that government agents may sweep up any person they wish, for [no] reason [whatsoever] . . . so long as the person will, at some unknown point in time, be allowed to ask some other official for his or her release offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (citing *Velasco Lopez*, 978 F.3d at 851-52; *Valdez*, 2025 WL 1707737, at *3-4).

30

For the reasons stated above, Mr. Lopez Benitez's Petition, ECF No. 1, is **GRANTED**.  As stated orally during the hearing, the Court **ORDERED** Respondents to transport Mr. Lopez Benitez (A Number 240-425-738) back to the Southern District of New York by Thursday, July 31, 2025, and immediately upon effectuating his transfer, to release Mr. Lopez Benitez from custody; and further, to certify compliance with the Court's order by a filing on the docket.  On August 1, 2025, Respondents confirmed that Mr. Lopez Benitez was released from custody on July 31, 2025, in accordance with the Court's order.  *See* August 1, 2025 Letter.  The Clerk of Court is respectfully directed to terminate the case.  The Clerk of Court is further respectfully directed to strike ECF No. 14 from the docket.

SO ORDERED.

Dated: August 8, 2025

Amended August 13, 2025

New York, New York

DALE E. HO
United States District Judge